**WILDE & ASSOCIATES**
Gregory L. Wilde, Esq.
Nevada Bar No. 004417
208 South Jones Boulevard
Las Vegas, Nevada 89107
Telephone:  702 258-8200
bk@wildelaw.com
Fax:  702 258-8787
and
MARK S. BOSCO, ESQ.
Arizona Bar No. 010167
TIFFANY & BOSCO, P.A.
2525 East Camelback Road, Suite 300
Phoenix, Arizona 85016
Telephone: (602) 255-6000

Electronically Filed on _____

Bank of America, National Association as seccessor by merger to LaSalle Bank National Association, as Trustee for the C-Bass Mortgage Loan Asset-BAcked Certificates, Series 2006-CB7
09-73841

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

In Re:

Carlos Moyano

                Debtor.

BK-09-12720-bam

Date:  7/14/09
Time: 1:30pm

Chapter 7

## MOTION FOR RELIEF FROM AUTOMATIC STAY

Bank of America, National Association as seccessor by merger to LaSalle Bank National Association, as Trustee for the C-Bass Mortgage Loan Asset-BAcked Certificates, Series 2006-CB7, Secured Creditor herein, ("Secured Creditor" or "Movant" hereinafter), alleges as follows:

1.      That on or about February 27, 2009, the above named Debtors filed their current Chapter 13 Petition in Bankruptcy with the Court.

2.      Secured Creditor is the current payee of a promissory note dated March 2, 2006 in the principal sum of $285,000.00 ("Promissory Note" herein), secured by a Real Property Trust Deed of

same date ("Trust Deed" herein) upon property generally described as 901 Billings Street, Henderson, NV 89015, and legally described as follows:

> Lot Five (5) in Block One (1) of DESERT HIGHLANDS - PHASE 1, as shown by map thereof on file in Book 51 of Plats, Page 95, in the Office of the County Recorder of Clark County, Nevada.

("subject property" herein).

3.  Secured Creditor is informed and believes, and, based upon such information and belief, alleges that title to the subject property is currently vested in the name of Debtor and that the Debtor is in default of the loan obligations.

4.  With respect to secured Creditor's trust deed the following is due and owing:

| | |
|---|---|
| Unpaid Principal Balance | $287,418.10 |
| 4 Monthly Payments at $2,253.19 (March 1, 2009 – June 1, 2009) | $ 9,012.76 |
| Late Charges at $ 122.62 each | $   245.24 |
| Motion Filing Fee | $   150.00 |
| Attorneys Fees | $   750.00 |
| Total Arrearages | $10,158.00 |

Furthermore, a payment becomes due on July 1, 2009 and on the first (1st) day of every month thereafter, and a late charge becomes due on any payment not paid within fifteen (15) days from the date the monthly payment is due.

5.  Movant is informed and believes and therefore alleges that the Debtor and bankruptcy estate have insufficient equity in the property. The fair market value of the property pursuant to Debtor's Schedule "A" is $186,500.00, less ten percent (10%) cost of marketing, less the first secured lien resulting in insufficient equity. Therefore, secured creditor is not adequately protected. A true and correct copy of the Debtor's Schedule "A" is attached hereto as Exhibit "A".

6.  Secured Creditor has elected to initiate foreclosure proceedings on the Property with respect to the subject Trust Deed; however Secured Creditor is precluded from proceeding to publish the necessary notices and commence said foreclosure action during the pendency of this Bankruptcy.

7.  Secured Creditor has incurred to date attorney's fees of approximately $750.00.

8. Secured Creditor urges that this Court issue and Order herein permitting this Secured Creditor to proceed to a Foreclosure Sale of the Property, including necessary action to obtain possession of the Property.

9. Secured Creditor's Information Sheet as to the extent of liens and encumbrances against the subject property is attached hereto as Exhibit "B" and incorporated herein by reference. Secured Creditor will seek leave of Court to specify any further encumbrances against the subject property at the time of hearing.

10. Lenard E Schwartzer has been appointed by this Court the Chapter 13 Trustee in this instant Bankruptcy proceeding. By virtue of the position as Trustee of the estate of Debtor herein, Debtor holds title to the subject property in that capacity. To the extent the relief sought herein is granted, Respondent, Lenard E Schwartzer, Trustee, is bound any such judgment.

11. This Court has jurisdiction of this action pursuant to the provisions of 11 U.S.C. Section 362(d).

12. Secured Creditor asserts that a foreclosure proceeding has not been initiated concerning the subject property. As a result, Secured Creditor asks the Court to waive the requirement of notifying other lienholders as detailed in Local Rule 4001 (a)(1). Such lienholders will be notified of a foreclosure proceeding if and when one is initiated.

WHEREFORE, Secured Creditor prays judgment as follows:

(1) For an order granting relief from the Automatic Stay, and permitting this Secured Creditor to move ahead with foreclosure proceedings under this Secured Creditor's Trust Deed and to sell the subject property at a Foreclosure Sale under the items of said Trust Deed, including necessary action to obtain possession of the Property.

(2) For a finding that Rule 4001(a)(3) of the Rules of Federal Bankruptcy Procedure is not applicable and Secured Creditor may immediately enforce and implement the order for relief from the automatic stay.

(3)     In the alternative, an Order requiring the Debtor to reinstate and maintain all obligations due under all of the trust deeds encumbering the subject property and further allowing Secured Creditor with the remedies to proceed with foreclosure should the Debtor not maintain payments.

(4)     For attorneys' fees and costs of suit incurred herein.

(5)     For such other and further relief as this Court deems appropriate.

DATED ___4/16/09_____

WILDE & ASSOCIATES

By_____
GREGORY L. WILDE, ESQ.
Attorney for Secured Creditor
208 South Jones Boulevard
Las Vegas, Nevada 89107

When recorded, mail to:
Argent Mortgage Company, LLC
3 Park Plaza, 19th Floor
Irvine, CA 92614

Loan Number: 0095020871 - 9704
APN No. 179-28-413-045

# ASSIGNMENT OF DEED OF TRUST BY BENEFICIARY

FOR VALUE RECEIVED, Argent Mortgage Company, LLC
the beneficiary, under that certain Deed of Trust dated 03/02/06 and delivered by

CARLOS MOYANO, An Unmarried Man
*address: 901 Billings Street, Henderson, NV. 89015*
*Inst# 20060307-0003757*

Trustor to Town and Country Title Services, Inc. Trustee,

and recorded as Instrument No.                  on *March 7, 2006*

in Book *n/a*      at page *n/a*   of the Official Records in the

office of the County Recorder of CLARK County, State of Nevada hereby

grants, assigns, transfers and sets over to          LaSalle Bank National Association, as trustee
                                                                            135 South LaSalle St, Suite 1625, Chicago, IL 60603

the said Deed of Trust, and all right, title and interest in and to the real property thereby conveyed,

together with the Deed of Trust Note therein mentioned and all monies due or that may hereafter become

due thereunder, subject only to the provisions as said Deed of Trust specified.
PROPERTY DESCRIBED AS:
                    "EXHIBIT A ATTACHED HERETO AND MADE A PART HEREOF"

IN WITNESS WHEREOF, Argent Mortgage Company, LLC, has caused this instrument to be executed
by its duly authorized officer MALI WRIGHT,

This 03/08/2006.
                                                                       LaSalle Bank National Association, as trustee
                                                                       for the C-BASS Mortgage Loan Asset-Backed
Argent Mortgage Company, LLC                         Certificates, Series 2006-CB7, without recourse

By: _____
     MALI WRIGHT - AGENT

State of  California
County of  Orange

On  03/08/2006     before me,  FRANCISCO BALTAZAR
personally appeared  MALI WRIGHT

F. BALTAZAR
Commission # 1631962
Notary Public - California
Orange County
My Comm. Expires Dec 20, 2009

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose
name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed
the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument
the person(s) or the entity upon behalf of which is the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

FRANCISCO BALTAZAR

750-NV1 (12/2005)                                                                                            (Seal)

2008-CR7





## EXHIBIT "A"

Lot Five (5) in Block One (1) of DESERT HIGHLANDS - PHASE 1, as shown by map thereof on file in Book 51 of Plats, Page 95, in the Office of the County Recorder of Clark County, Nevada.

Parcel ID Number: 179-28-413-045

Assessor's Parcel Number:
179-28-413-045
Return To:
Argent Mortgage Company, LLC
C/O Nationwide Title Clearing, Inc.
2100 Alt 19 North
Palm Harbor, FL 34683
Prepared By:Argent Mortgage Company, LLC
Deena Baca
2603 Main Street,Irvine, CA 92614

~~Recording Requested By:~~
Argent Mortgage Company, LLC

6

**20060307-0003757**

Fee: $32.00
N/C Fee: $0.00

03/07/2006          14:42:01
T20060040669
Requestor:
    NATIONAL TITLE COMPANY

Frances Deane                DMU
Clark County Recorder    Pgs: 19

———————————[Space Above This Line For Recording Data]———————————

# DEED OF TRUST

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated March 2, 2006
together with all Riders to this document.
(B) "Borrower" is CARLOS MOYANO, An Unmarried Man

Borrower is the trustor under this Security Instrument.
(C) "Lender" is Argent Mortgage Company, LLC

Lender is a Limited Liability Company
organized and existing under the laws of Delaware

0095020871 - 9704

NEVADA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    Form 3029  1/01

-6(NV) (0005)
Page 1 of 15                        Initials
      VMP MORTGAGE FORMS - (800)521-7291

03/02/2006  9:42:45

D06-01NV

Lender's address is **3 Park Plaza - 10th Floor  Irvine, CA 92614**

Lender is the beneficiary under this Security Instrument.
**(D)** "**Trustee**" is **Town and Country Title Services, Inc.**

**(E)** "**Note**" means the promissory note signed by Borrower and dated **March 2, 2006**
The Note states that Borrower owes Lender **two hundred eighty-five thousand and 00/100**
                                                                                        Dollars
**(U.S. $285,000.00**                ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than **April 1, 2036**
**(F)** "**Property**" means the property that is described below under the heading "Transfer of Rights in the
Property."
**(G)** "**Loan**" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
**(H)** "**Riders**" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [x] Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

**(I)** "**Applicable Law**" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
**(J)** "**Community Association Dues, Fees, and Assessments**" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
**(K)** "**Electronic Funds Transfer**" means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.
**(L)** "**Escrow Items**" means those items that are described in Section 3.
**(M)** "**Miscellaneous Proceeds**" means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.
**(N)** "**Mortgage Insurance**" means insurance protecting Lender against the nonpayment of, or default on,
the Loan.
**(O)** "**Periodic Payment**" means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.
**(P)** "**RESPA**" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to
time, or any additional or successor legislation or regulation that governs the same subject matter. As used
in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard

009502887 - 9704
Initials
03/02/2006 9:42:45

-6(NV) (0005)                    Page 2 of 15                    Form 3029  1/01

D06-02NV

to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the
        County                        of              **CLARK**                          :
        [Type of Recording Jurisdiction]                        [Name of Recording Jurisdiction]
**EXHIBIT A ATTACHED HERETO AND MADE A PART HEREOF:**

Parcel ID Number: **179-28-413-045**                    which currently has the address of
**901 BILLINGS STREET**                                                    [Street]
**HENDERSON**                                    [City], Nevada **89015**        [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items

                                                        009502087T  9704
                                                        Initials:

-6(NV) (0005)                Page 3 of 15        03/02/2006 9:42:45  Form 3029  1/01

D06-03NV

pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

0095028872 - 9704
Initials: _____

D06-04NV

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than twelve monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than twelve monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

0095020871 - 9704
Initials: _____

-6(NV) (0005)                     Page 6 of 15      03/02/2006 9:42:45     Form 3029  1/01

D06-06NV

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

0095020871 - 9704

Initials

-6(NV) (0008)

Page 8 of 15    03/02/2006 9:42:45    Form 3029  1/01

D06-08NV

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

0095020073 - 9704

Initials: _____

-6(NV) (0005)          Page 9 of 16          03/02/2006  9:42:45          Form 3029   1/01

D06-09NV

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

0095020071  9704

Initials

-6(NV) (0005)                Page 10 of 15    03/02/2006  9:42:45    Form 3029   1/01

D06-10NV

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be

0095020871 -9704

Initials ____

-6(NV) (0005)          Page 11 of 15    03/02/2006 9:42:45    Form 3029    1/01

D06-11NV

one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

0095920871 - 9704

Initials

-6(NV) (0005)    Page 12 of 15    03/02/2006 9:42:45    Form 3029 1/01

D06-12NV

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option, and without further demand, may invoke the power of sale, including the right to accelerate full payment of the Note, and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold, and shall cause such notice to be recorded in each county in which any part of the Property is located. Lender shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs. Lender may charge such person or persons a fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Substitute Trustee.** Lender at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

**25. Assumption Fee.** If there is an assumption of this loan, Lender may charge an assumption fee of U.S. $ 0.00

0095020871   9704
Initials:

-6(NV) (0005)    Page 13 of 16    03/02/2006 5:42:45    Form 3029   1/01

D06-13NV

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____          _____ (Seal)
                                            CARLOS MOYANO                -Borrower


_____          _____ (Seal)
                                                                         -Borrower


_____ (Seal)           _____ (Seal)
                         -Borrower                                        -Borrower


_____ (Seal)           _____ (Seal)
                         -Borrower                                        -Borrower


_____ (Seal)           _____ (Seal)
                         -Borrower                                        -Borrower


0095020871 - 9704

 -6(NV) (0005)                    Page 14 of 15  03/02/2006  9:42:45 AM  Form 3029  1/01

D06-14NV

**STATE OF NEVADA**
**COUNTY OF** CLARK

This instrument was acknowledged before me on 2nd MARCH 2006 by
Day/Month/Year

CARLOS MOYANO



Notary Public

My Commission Expires: 2/26/07



Notary Public - State of Nevada
County of Clark
M. A. LEJARDI
My Appointment Expires
Febuary 26, 2007
No. 01-R0762-1

0095020871 - 9704
03/02/2006 8:42:45 AM

Page 15 of 15

400-15NV

## EXHIBIT "A"

Lot Five (5) in Block One (1) of DESERT HIGHLANDS - PHASE 1, as shown by map thereof on file in Book 51 of Plats, Page 95, in the Office of the County Recorder of Clark County, Nevada.

# ADJUSTABLE RATE RIDER

### (LIBOR Six-Month-Index (As Published in the Wall Street Journal)- Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this 2nd day of March , 2006  and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to Argent Mortgage Company, LLC (the "Lender") of the same date and covering the property described in the Security Instrument and located at:

901 BILLINGS STREET, HENDERSON, NV  89015
[Property Address]

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

## A.   INTEREST RATE AND MONTHLY PAYMENT CHANGES

The Note provides for an initial interest rate of  7.700 %. The Note provides for changes in the interest rate and the monthly payments, as follows:

## 4.   INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A) Change Dates

The interest rate I will pay may change on the first day of April, 2008  , and on that day every sixth  month thereafter. Each date on which my interest rate could change is called a "Change Date."

### (B) The Index

Beginning with the first Change Date, my interest rate will be based on an Index.  The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as  published in the Wall Street Journal.  The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information.  The Note Holder will give me notice of this choice.

Initials _____

Loan Number: 0095020871 - 9704

610-1 (Rev 1/01)                    Page 1 of 3

03/02/2006 9:42:45 AM

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding **six** percentage points ( **6.000 %**) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than **9.700% or less than 7.700%**. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than One( **1.000 %**) from the rate of interest I have been paying for the preceding   six months. My interest rate will never be greater than 13.700)% or less than 7.700)%.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Section 18 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

Initials _____

Loan Number:  0095020871 - 9704

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by federal law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing. If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)        _____ (Seal)
Borrower CARLOS MOYANO                          Borrower


_____ (Seal)        _____ (Seal)
Borrower                                        Borrower


Loan Number: 0095020871 - 9704


810-3 (Rev 1/01)                     Page 3 of 3

                                                           03/02/2006 9:42:45 AM

APN# 179-28-413-045

**Recording Requested By and**
~~When Recorded Mail To:~~
*First American Title*
*Loss Mitigation Title Services-LMTS*
*P.O. Box 27670*
*Santa Ana, CA 92799*
Attn:  Recording Dept
FAT# ____

**STATE:** NEVADA
**COUNTY:** CLARK
*19*

When recorded mail to:
First American Title Insurance Co.
Lenders Advantage/*3 49 63 75*
1100 Superior Avenue, Suite 200
Cleveland, Ohio  44114
Attn: NR1120
*#1212 1104*

```
20070510-0003086

Fee: $16.00
N/C Fee: $0.00
05/10/2007            13:45:30
T20070082652
Requestor:
   TITLE COURT SERVICE INC
Debbie Conway              ADF
Clark County Recorder      Pgs: 3
```

<u>ASSIGNMENT OF DEED OF TRUST BY BENEFICIARY</u>
**(Title of Document)**

**Please complete the cover page, check one of the following and sign below.**

&#9745; I the undersigned hereby affirm that this document submitted for recording does not contain a social security number.

OR

&#9633; I the undersigned hereby affirm that this document submitted for recording contains a social security number of a person as require by law: _____(Law).

Signature: *Tamea Swanson*                    Title: *Jr. Analyst*
Tamea Swanson                                      Jr. Analyst



**This page added to provide additional information required by NRS 111.312 Sections 1-2.**
**(Additional recording fee applies) This cover page must be typed or printed.**

When recorded mail to:
Argent Mortgage Company, LLC
3 Park Plaza, 19th Floor
Irvine, CA 92614

Loan Number 0095020871 - 9704
APN No. 179-28-413-045

# ASSIGNMENT OF DEED OF TRUST BY BENEFICIARY

FOR VALUE RECEIVED, Argent Mortgage Company, LLC
the beneficiary, under that certain Deed of Trust dated 03/02/06 and delivered by
CARLOS MOYANO, An Unmarried Man

*Address: 901 Billings Street, Henderson, NV. 89015*
*Inst# 20060307-0003757*

Trustor to  Town and Country Title Services, Inc.  Trustee,
and recorded as Instrument No.      on *March 7, 2006*
in Book *n/a*   at page *n/a*   of the Official Records  in the
office of the County Recorder of  CLARK County, State of Nevada hereby
grants, assigns, transfers and sets over to      LaSalle Bank National Association, as trustee
                                                 135 South LaSalle St, Suite 1625, Chicago, IL 60603
the said Deed of Trust, and all right, title and interest in and to the real property thereby conveyed,
together with the Deed of Trust Note therein mentioned and all monies due or that may hereafter become
due thereunder, subject only to the provisions as said Deed of Trust specified.
PROPERTY DESCRIBED AS:
  "EXHIBIT A ATTACHED HERETO AND MADE A PART HEREOF"
IN WITNESS WHEREOF, Argent Mortgage Company, LLC, has caused this instrument to be executed
by its duly authorized officer MALI WRIGHT,
This  03/08/2006.

Argent Mortgage Company, LLC

By:  _____
    MALI WRIGHT - AGENT

LaSalle Bank National Association, as trustee
for the C-BASS Mortgage Loan Asset-Backed
Certificates, Series 2006-CB7,without recourse

State of  California
County of  Orange

On  03/08/2006   before me,  FRANCISCO BALTAZAR
personally appeared  MALI WRIGHT
personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose
name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed
the same in his/her/their authorized capacity(ies), and that  by his/her/their signature(s) on the instrument
the person(s) or the entity upon behalf of which is the person(s) acted,  executed the instrument.

WITNESS my hand and official seal.

_____
FRANCISCO BALTAZAR

750-NV1 (12/2005)                                                              (Seal)

## EXHIBIT "A"

Lot Five (5) in Block One (1) of DESERT HIGHLANDS - PHASE 1, as shown by map thereof on file in Book 51 of Plats, Page 95, in the Office of the County Recorder of Clark County, Nevada.

Parcel ID Number: 179-28-413-045

20080715-0000883
Fee: $14.00    RPTT: $0.00
N/C Fee: $25.00
07/15/2008      09:23:00
T20080143062
Requestor:
  LSI TITLE AGENCY INC.
Debbie Conway          OSA
Clark County Recorder    Pgs: 1

RECORDING REQUESTED BY:
Chicago Default Services - NV
WHEN RECORDED MAIL TO:
. National Default Servicing Corporation
2525 East Camelback Road, Suite 200
Phoenix, AZ 85016

NDSC File No.  : 08-31033-LL-NV
Loan No.        : 15825771

APN        : 179-28-413-045

982-7686

## SUBSTITUTION OF TRUSTEE

WHEREAS, CARLOS MOYANO, AN UNMARRIED MAN was the original Trustor(s), TOWN AND COUNTRY TITLE SERVICES, INC. was the original Trustee and ARGENT MORTGAGE COMPANY, LLC. was the original Beneficiary under that certain Deed of Trust dated 03/02/2006 and recorded on  03/07/2006 as instrument No. 20060307-0003757 in Book, Page, of Official Records of CLARK County, State of NV and

WHEREAS, the undersigned is the present beneficiary under the said Deed of Trust, and

WHEREAS, the undersigned desires to substitute a new Trustee under said Deed of Trust in place of said original Trustee, or Successor Trustee, thereunder, in the manner in said Deed of Trust provided,

NOW, THEREFORE, the undersigned hereby substitutes NATIONAL DEFAULT SERVICING CORPORATION, An Arizona Corporation, whose address is 2525 East Camelback Road, Suite 200, Phoenix, Arizona 85016, as Trustee under said Deed of Trust.

Whenever the context hereof requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

LaSalle Bank National Association, as Trustee for the C-BASS Mortgage Loan Asset-Backed Certificates, Series 2006-CB7

Dated : 5-13-08

By : Diane Dixon
Its : Assistant Vice President

County of Harris
State of Texas

LITTON LOAN SERVICING, LP
ATTORNEY-IN-FACT

On MAY 1 3 2008 , 20____, before me, _____ Brenda F. McKinzy _____ , a Notary Public for said State, personally appeared _____ Diane Dixon _____ personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of _____ TX _____ that the foregoing is true and correct.

WITNESS my hand and official seal.

Signature Brenda F. McKinzy

BRENDA F. MCKINZY
Notary Public, State of Texas
My Commission Expires
December 05, 2010

20080716-0001481
Fee: $14.00    RPTT: $0.00
N/C Fee: $0.00
07/16/2008        11:56:00
T20080144976
Requestor:
    LSI TITLE AGENCY INC.
Debbie Conway          DBX
Clark County Recorder   Pgs: 1

RECORDING REQUESTED BY:
Chicago Default Services - NV
WHEN RECORDED MAIL TO:
National Default Servicing Corporation
2525 East Camelback Road, Suite 200
Phoenix, AZ 85016

NDSC File No.  : 08-31033-LL-NV
Loan No.          : 15825771

APN              : 179-28-413-045
        q8276806

## SUBSTITUTION OF TRUSTEE

WHEREAS, CARLOS MOYANO, AN UNMARRIED MAN was the original Trustor(s), TOWN AND COUNTRY TITLE SERVICES, INC. was the original Trustee and ARGENT MORTGAGE COMPANY, LLC. was the original Beneficiary under that certain Deed of Trust dated 03/02/2006 and recorded on  03/07/2006 as instrument No. 20060307-0003757 in Book, Page, of Official Records of CLARK County, State of NV and

WHEREAS, the undersigned is the present beneficiary under the said Deed of Trust, and

WHEREAS, the undersigned desires to substitute a new Trustee under said Deed of Trust in place of said original Trustee, or Successor Trustee, thereunder, in the manner in said Deed of Trust provided,

NOW, THEREFORE, the undersigned hereby substitutes NATIONAL DEFAULT SERVICING CORPORATION, An Arizona Corporation, whose address is 2525 East Camelback Road, Suite 200, Phoenix, Arizona 85016, as Trustee under said Deed of Trust.

Whenever the context hereof requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

LaSalle Bank National Association, as Trustee for the C-BASS Mortgage Loan Asset-Backed Certificates, Series 2006-CB7

Dated : 5-13-08

By :  _Diane Dixon_
Its :  Assistant Vice President

County of _Harris_
State of _Texas_

LITTON LOAN SERVICING, LP
ATTORNEY-IN-FACT

On MAY 1 3 2008 , 20____, before me, __Brenda F. McKinzy__ , a Notary Public for said State, personally appeared _____Diane Dixon_____ personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of ____TX____ that the foregoing is true and correct.

WITNESS my hand and official seal.

Signature _Brenda F. McKinzy_



BRENDA F. MCKINZY
Notary Public, State of Texas
My Commission Expires
December 05, 2010





**2081112-0004352**

Fee: $15.00
N/C Fee: $0.00

11/12/2008            14:05:26
T20080275986
**Requestor:**
FIDELITY NATIONAL DEFAULT SOLUTIONS TUST

**Debbie Conway**                    KXC
**Clark County Recorder**   Pgs: 2

LSI Title Company
**WHEN RECORDED MAIL TO:**
National Default Servicing Corporation
2525 East Camelback Road, Suite 200
Phoenix, AZ 85016

NDSC File No.  :  08-33087-LL-NV
Loan No.        :  15825771
Title Order No.  :  080074730

APN: 179-28-413-045

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST
## IMPORTANT NOTICE

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS, IT MAY BE SOLD WITHOUT ANY COURT ACTION, and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until three months from the date this notice of default may be recorded (which date of recordation appears on this notice).**

**This amount is $13,511.87, as of 11/11/2008 and will increase until your account becomes current.**

**While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your Note and Deed of Trust or Mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required by the Note and Deed of Trust or Mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a condition to reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.**

**Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than the end of the three month period stated above) to, among other things, (1) provide additional time in which to cure the default by the transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).**

**Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor.**

NDSC File No. :  08-33087-LL-NV
Loan No.      :  15825771

     To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:

Litton Loan Servicing
c/o National Default Servicing Corporation
2525 East Camelback Road, Suite 200
Phoenix, AZ 85016    Phone 602-264-6101    Sales Website: www.ndscorp.com/sales

     If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan.  Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale, provided the sale is concluded prior to the conclusion of the foreclosure.  Remember, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.

This is an attempt to collect a debt and any information obtained will be used for that purpose.

NOTICE IS HEREBY GIVEN THAT : NATIONAL DEFAULT SERVICING CORPORATION is either the original Trustee, the duly appointed substituted Trustee or acting as agent for the Trustee or Beneficiary under a Deed of Trust dated 03/02/2006, executed by CARLOS MOYANO, AN UNMARRIED MAN, as Trustor, to secure certain obligations in favor of ARGENT MORTGAGE COMPANY as beneficiary recorded 03/07/2006, as Instrument No. 20060307-0003757 (or Book, Inst.) of Official Records in the Office of the County Recorder of CLARK County, NV.  Said obligations including ONE NOTE FOR THE ORIGINAL sum of $285,000.00.

That a breach of, and default in, the obligations for which such Deed of Trust is security has occurred in that payment has not been made of :  FAILURE TO PAY THE INSTALLMENT OF PRINCIPAL, INTEREST AND IMPOUNDS WHICH BECAME DUE ON 08/01/2008 AND ALL SUBSEQUENT INSTALLMENTS OF PRINCIPAL, INTEREST AND IMPOUNDS, TOGETHER WITH ALL LATE CHARGES; PLUS ADVANCES MADE AND COSTS INCURRED BY THE BENEFICIARY INCLUDING FORECLOSURE FEES AND COSTS AND/OR ATTORNEY'S FEES.

That by reason thereof, the present beneficiary under such Deed of Trust has executed and delivered to duly appointed Trustee a written Declaration of Default and Demand for Sale, and has deposited with said duly appointed Trustee such Deed of Trust and all documents evidencing obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

Dated  :     November 12, 2008
National Default Servicing Corporation, As Agent for  Litton Loan Servicing

_____

By : Gary Trafford, LSI Title Agency, Inc., an Illinois Corporation as Agent

20090212-0004960

Fee: $17.00     RPTT: $0.00
N/C Fee: $0.00
02/12/2009          15:01:13
T20090049592
Requestor:
  FIDELITY NATIONAL DEFAULT SO
  Debbie Conway          ARO
  Clark County Recorder     Pgs: 4

RECORDING REQUESTED BY:

WHEN RECORDED MAIL TO:
National Default Servicing Corporation
2525 East Camelback Road, Suite 200
Phoenix, AZ 85016

| | | |
|---|---|---|
| NDSC File No. | : | 08-33087-LL-NV |
| Loan No. | : | 15825771 |
| Title Order No. | : | 080074730 |
| APN No. | : | 179-28-413-045 |

## NOTICE OF TRUSTEE'S SALE

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST, DATED 03/02/2006 UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.**

Notice is hereby given that **National Default Servicing Corporation** as trustee (or successor trustee, or substituted trustee), pursuant to the Deed of Trust executed by CARLOS MOYANO, AN UNMARRIED MAN, dated 03/02/2006 and recorded 03/07/2006, as Instrument No. 20060307-0003757 in Book , Page , of Official Records in the office of the County Recorder of CLARK County, State of NV, and pursuant to the Notice of Default and Election to Sell thereunder recorded 11/12/2008 as Instrument No. 20081112-0004352 (or Book , Page ) of said Official Records, will sell on 03/06/2009 at 10:00 A.M. at:

**AT THE FRONT ENTRANCE TO THE NEVADA LEGAL NEWS 930 S. 4TH STREET, LAS VEGAS, NV 89101 **EFFECTIVE 2/1/09, THE SALES WILL BE HELD AT 10:00 A.M.****

at public auction, to the highest bidder for cash (in the forms which are lawful tender in the United States, payable in full at time of sale), all right, title, and interest conveyed to and now held by it under said Deed of Trust, in the property situated in said County and State and more fully described in Exhibit A attached hereto and made a part hereof.

The street address and other common designation, if any, of the real property described above is purported to be:

901 BILLINGS STREET
HENDERSON, NV  89015

The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common designation, if any, shown herein.

NDSC File No. :    08-33087-LL-NV
APN No.    :    179-28-413-045

The estimated total amount of the unpaid balance of the obligation secured by the property to be sold and reasonable estimated costs, expenses and advances at the time of the initial publications of the Notice of Sale is **$305,481.43**. It is possible that at the time of sale the opening bid may be less than the total indebtedness due.

In addition to cash, the Trustee will accept cashier's checks drawn on a state or national bank, a check drawn by a state or federal credit union, or a check drawn by a state or federal savings and loan association, savings association, or savings bank specified in Section 5102 of the Financial Code and authorized to do business in this state. In the event tender other than cash is accepted, the Trustee may withhold the issuance of the Trustee's Deed until funds become available to the payee or endorsee as a matter of right.

Said sale will be made, in an "as is" condition, without covenant or warranty, express or implied, regarding title, possession or encumbrances, to satisfy the indebtedness secured by said Deed of Trust, advances thereunder, with interest as provided therein, and the unpaid balance of the Note secured by said Deed of Trust with interest thereon as provided in said Note, plus fees, charges and expenses of the Trustee and of the trusts created by said Deed of Trust. The lender is unable to validate the condition, defects or disclosure issues of said property and Buyer waives the disclosure requirements under NRS 113.130 by purchasing at this sale and signing said receipt.

If the Trustee is unable to convey title for any reason, the successful bidder's sole and exclusive remedy shall be the return of monies paid to the Trustee, and the successful bidder shall have no further recourse.

Date: 02/13/2009

**National Default Servicing Corporation**
**2525 East Camelback Road, Suite 200**
**Phoenix, AZ 85016**
**602-264-6101**
**Sales Line : 714-259-7850   Sales Website: www.ndscorp.com/sales**

By: _____
    Nichole Alford, TRUSTEE SALES REPRESENTATIVE

**Exhibit A**

**NDSC Notice of Sale Addendum**

| | | |
|---|---|---|
| **NDSC No.** | : | 08-33087-LL-NV |
| **LOAN NO.** | : | 15825771 |
| **PROP. ADDRESS** | : | 901 BILLINGS STREET<br>HENDERSON, NV  89015 |
| **COUNTY** | : | CLARK |

**LEGAL DESCRIPTION :**

LOT FIVE (5) IN BLOCK ONE (1) OF DESERT HIGHLANDS - PHASE 1, AS SHOWN BY MAP THEREOF ON FILE IN BOOK 51 OF PLATS, PAGE 95, IN THE OFFICE OF THE COUNTY RECORDER OF CLARK COUNTY, NEVADA.

**STATE OF ARIZONA**
**COUNTY OF MARICOPA**

On ___ 2 | 3 ___, 2009, before me, **Dana A. Boer**, a Notary Public for said State, personally appeared **Nichole Alford** who personally known to me (or who proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of Arizona that the foregoing is true and correct.



OFFICIAL SEAL
DANA A. BOER
Notary Public - State of Arizona
MARICOPA COUNTY
My Comm. Expires Feb. 5, 2010

**WITNESS** MY HAND AND OFFICIAL SEAL

## ⚖ Zillow.com®

**901 Billings St**
Henderson NV 89002

3 beds, 2.0 baths, 1,448 sq ft
**Zestimate®: $186,500**

Get a free professional estimate
**My Estimate:**

**Monthly Payment: $ 869 edit**
ING DIRECT 5/1 ARM·Seo Rates today!

**Bird's Eye View**



See a

**Home Info**

**Public Facts:**
- Single family
- 3 beds
- 2.0 bath
- 1,448 sqft
- Lot 6,969 sqft
- Built in 1992

**Neighborhood: Mission Hills**

**Nearby Schools:**

**District:**
    Clark
**Primary:**
    J. Marian Walker ...
**Middle:**
    Jack & Terry Mannion ...
**High:**
    Foothill High School

See more Mission Hills local information
See more Mission Hills schools

**Charts & Data**

See all charts & data

**Interested in selling this house?
Work with an agent from
Prudential Americana Group,
REALTORS to get a professional
estimate.**

**First Name***

**Last Name***

**Email Address***

EXHIBIT _A_

901 Billings St, Henderson, NV 89002 - Zillow

**ZESTIMATE®: $186,500**
Value Range: $149,200 -
$199,555
30-day change: -$6,000
*Zestimate updated: 06/08/2009*

**Last sale and tax info**

**Sold 07/14/2003:**
     **$148,800**
**2009 Property Tax:**
     **$1,896**

: 23 – Car-Dependent

**Phone Number***

(       )      .

ext.

**I am***

Please Choose One

**Message (optional)**

Or call (888) 321-0667

---

| **Street Map** |

**901 Billings Street, Henderson, NV**
 Bird's eye view and larger map for 901 Billings St

**Alternate Addresses**
901, billings, billing s, billing so, billing south, billings, billingso,
billingsouth, st, saint, sainte, ste, str, street, strt, henderson, nv, nev,
nevada, 89002

## ** SECTION 362 INFORMATION SHEET **

Carlos Moyano
DEBTOR(S)

Chapter 13
Case No.: 09-12720-bam

Bank of America, National Association as seccessor by merger to LaSalle Bank National Association, as
Trustee for the C-Bass Mortgage Loan Asset-BAcked Certificates, Series 2006-CB7
MOVANT

PROPERTY INVOLVED IN THIS MOTION: 901 Billings Street, Henderson NV 89015

NOTICE SERVED ON: Debtor(s) _____ x _____; Debtor (s) Counsel _____ x _____; Trustee _____ x _____

DATE OF SERVICE: _____

| MOVING PARTY'S CONTENTIONS: | DEBTOR'S CONTENTIONS: |
|---|---|
| The EXTENT and PRIORITY of LIENS: | The EXTENT and PRIORITY of LIENS: |
| 1st Bank of America, National Association as seccessor by merger to LaSalle Bank National Association, as Trustee for the C-Bass Mortgage Loan Asset-BAcked Certificates, Series 2006-CB7 (PB$287,418.10) | 1st _____ |
|  | 2nd _____ |
|  | Total Encumbrances: $_____ |
| Total Encumbrances: $287,418.10 | APPRAISAL or OPINION as to VALUE: |
| APPRAISAL or OPINION as to VALUE: "Per attached Schedule "A" $186,500.00 |  |

| TERMS OF MOVANT'S CONTRACT WITH THE DEBTOR | OFFER OF "ADEQUATE PROTECTION" FOR MOVANT: |
|---|---|
| Amount of Note: $<br>Interest Rate: 7.5<br>Duration: 30 Year<br>Payment Per Month: $ 2,253.10<br>Date of Default: August 1, 2008<br>Amount of Arrearages: $10,158.00<br>Date of Notice of Default: June 5, 2009<br>SPECIAL CIRCUMSTANCES: **I, Gregory L. Wilde, hereby certify that an attempt has been made to confer with debtor(s) counsel, or with debtor(s) and that more than two (2) business days have expired, and that after sincere effort to do so, counsel has been unable to resolve this matter without court action.**<br><br>SUBMITTED BY _____<br><br>SIGNATURE: _____ |  SPECIAL CIRCUMSTANCES:<br><br>SUBMITTED BY: _____<br><br>SIGNATURE: _____ |

EXHIBIT _B_